## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| H.Y.C., a minor,<br>by her Parents and Next Friends,<br>KYUNG CHUL CHO and JIN HEE CHO,<br>individually, S.Y.C., a minor,<br>by his Parents and Next Friends,<br><br>     Plaintiffs,<br><br>vs.<br><br>HYATT HOTELS CORPORATION,<br>a Delaware Corporation;<br>HYATT INTERNATIONAL<br>CORPORATION, a Delaware Corporation;<br>HYATT INTERNATIONAL TECHNICAL<br>SERVICES, INC., a Delaware Corporation,<br><br><br><br><br>     Defendants. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | C.A. No. 1:15-cv-00887 RGA<br><br><br><br><br><br><br><br>**JURY OF TWELVE DEMANDED**<br>**NON-ARBITRATION CASE** |

### FIRST AMENDED COMPLAINT

Plaintiffs H.Y.C., a minor, by her Parents and Next Friends, Kyung Chul Cho and Jin Hee Cho, Kyung Chul Cho, individually, Jin Hee Cho, individually, and S.Y.C., a minor, by his Parents and Next Friends, Kyung Chul Cho and Jin Hee Cho, by their undersigned counsel, allege as follows:

### NATURE OF THE ACTION

1.      Defendant, Hyatt Hotels Corporation, a Delaware Corporation ("Hyatt", and collectively with Defendants Hyatt International Corporation and Hyatt International Technical Services, Inc., "the Hyatt Defendants"), is one of the largest hotel management companies in the world.  As of March 31, 2015, the Company's

worldwide portfolio consisted of approximately 599 properties in 50 countries.  From its headquarters in Chicago, Illinois, Hyatt supports and promotes its Hyatt hotels worldwide, and maintains dominion and control over its hotel management subsidiaries including, but not limited to, developing programs and procedures for the training and supervision of hotel staff and the construction and maintenance of Hyatt-branded hotels and the various facilities that comprise such hotels.

2.      Hyatt exercises domination and control over a network of subsidiaries that allow it to control and manage its Hyatt-branded properties worldwide.  These include Hyatt International Hotels Corporation ("Hyatt International"), Hyatt International Technical Services, Inc., ("Hyatt Technical"), and Hyatt International – Asia Pacific, Limited ("Hyatt Asia-Pacific").[1]

3.   This is an action on behalf of H.Y.C., a young Korean girl, and her family for catastrophic personal injuries that she suffered in the swimming pool of the Hyatt Regency Danang Resort and Spa, in the city of Danang, Vietnam (the "Hotel") on or about October 3, 2014.  H.Y.C. was two years old at the time of the incident.

4.      At all relevant times, Hyatt, through its subsidiaries, operated the Hotel.

5.      The Hotel is billed on Hyatt's website as a "family-friendly" resort with an inviting swimming pool complete with "lifeguard service." In reality, the Hyatt Defendants failed to provide a lifeguard and failed to adequately warn that no lifeguard was present.  This misrepresentation and negligence were exacerbated by, among other

---

[1] Hyatt Asia-Pacific is fully owned by Hyatt as an indirect subsidiary.  At all relevant times, Hyatt Asia-Pacific was dominated, controlled, and/or used by Hyatt.  At all relevant times, the Hotel was managed and controlled by Hyatt Asia-Pacific (and in

things, the Hyatt Defendants' failure to properly train the employees of the Hotel to provide emergency response and resuscitation services.  As a result of the negligence of Hyatt and its subsidiary, Hyatt Asia-Pacific, H.Y.C. nearly drowned and was left in a persistent compromised state, in which she is expected to remain for the rest of her life. Hyatt was itself negligent, and is also liable for the negligence of its subsidiaries, each under the control and direction of Hyatt.  This includes the negligence of its subsidiary Hyatt International, which marketed the Hotel on Hyatt's behalf as a safe and "family-friendly" resort with lifeguard services (when in reality the pool was unsafe and had no lifeguard); and subsidiary Hyatt Technical, which negligently designed and/or approved the negligent design for the swimming pool.

6.      Hyatt is liable for Plaintiffs' injuries, both as a result of its direct control and domination of these subsidiaries, and, alternatively, under a theory of Hyatt's apparent authority over the Hotel.

7.      Plaintiffs demand general and special damages for pain and suffering, past, present and future medical expenses, negligent infliction of emotional distress and damages for mental anguish and loss of consortium.

## JURISDICTION AND VENUE

8.      Jurisdiction is proper in the United States District Court for the District of Delaware pursuant to 28 U.S.C. § 1332 because, among other reasons, there is complete diversity of citizenship between Plaintiffs and Defendants, the amount in controversy between Plaintiffs and Defendants exceeds $75,000 exclusive of interest

---

turn, by Hyatt, which controlled Hyatt Asia-Pacific) as a party to and under the terms of the Hotel Management Agreement ("HMA").

and costs. Defendants have significant contacts with this district by virtue of doing business within this judicial district. Defendants Hyatt, Hyatt International, and Hyatt Technical are incorporated under the laws of Delaware.

9.      Venue is proper in this District pursuant to 28 U.S.C. § 1391 because Defendants Hyatt, Hyatt International, and Hyatt Technical are incorporated under the laws of Delaware.

**THE PARTIES**

10.      Plaintiff H.Y.C. is a minor and a citizen of Korea, residing in Seoul, Korea.  H.Y.C. was two years old at the time of the incident.

11.      Plaintiff S.Y.C. is a minor and a citizen of Korea residing with his parents in Seoul, Korea.  S.Y.C. is the brother of H.Y.C., and was four years old at the time of the incident.

12.      Kyung Chul Cho and Jin Hee Cho are the Parents and Next Friends of H.Y.C. and S.Y.C., and are citizens of Korea residing in Seoul, Korea.

13.      Defendant Hyatt is a Delaware corporation with its principal place of business in Chicago, Illinois.  At all relevant times, the Hotel, located in the city of Danang, Vietnam, was controlled and operated by Hyatt through its direct and indirect subsidiaries.

14.      Defendant Hyatt International is a Delaware corporation with its principal place of business in Chicago, Illinois.  Hyatt International is fully owned by Hyatt as an indirect subsidiary.  At all relevant times, Hyatt International was dominated, controlled, and/or used by Hyatt.  At all relevant times, the marketing and

4

promotion for the Hotel, located in Danang, Vietnam, was controlled by Hyatt International as a party to, and under the terms of, the Marketing Sublicense Agreement.

15.     Defendant Hyatt Technical is a Delaware corporation with its principal place of business in Chicago, Illinois.  Upon information and belief, Hyatt Technical is a fully owned subsidiary of Hyatt.   At all relevant times, Hyatt Technical was dominated, controlled, and/or used by Hyatt.   At all relevant times, the design of the swimming pool of the Hotel, located in Danang, Vietnam, was controlled by Hyatt Technical as a party to, and under the terms of, the Technical Services Agreement.

### THE RELATIONSHIP BETWEEN HYATT AND THE HOTEL

16.     Hyatt is a Delaware hotel management company that, through its direct and indirect subsidiaries, advertises and manages high-quality, family-friendly hotels worldwide, including the Hotel.   On its website, Hyatt boasts that it is "a global hospitality company with widely recognized, industry leading brands and a tradition of innovation developed over our more than fifty-year history."

17.     Upon information and belief, Hyatt, through its controlled indirect subsidiary Hyatt Asia-Pacific, entered into the HMA with the Hotel, which provided that Hyatt Asia-Pacific, controlled by Hyatt, controlled the standards, employee training requirements, guest safety protocols, and other specifications to which the Hotel was operated.   Further, Hyatt Asia-Pacific, controlled by Hyatt, retains the right to inspect and investigate the Hotel at any time to ensure ongoing compliance with Hyatt's rules and regulations.

18.     For example, the HMA states that "Hyatt [through its controlled indirect subsidiary Hyatt Asia-Pacific,] shall . . . operate the Hotel under standards comparable to those prevailing in 'Hyatt Regency' hotels" and that "Hyatt shall . . . have complete control and discretion in the operation of the Hotel."  Hyatt Asia-Pacific, controlled by Hyatt, has powers as manager that include "the hiring and discharging of employees," "maintenance of bank accounts and holding of funds in the trade names of the Hotel," and "all phases of promotion and publicity relating to the Hotel."  Hyatt Asia-Pacific, controlled by Hyatt, agreed to operate "all facilities" at the Hotel, including "the recreational facilities" such as the swimming pool.  Hyatt Asia-Pacific, controlled by Hyatt, also claimed the sole power to "recruit, interview, and hire employees" of the hotel.  Hyatt Asia-Pacific, controlled by Hyatt, had the sole right to approve the adequacy of the Hotel's employee training and, upon information and belief, was responsible for training the hotel's employees consistent with Hyatt standards and procedures.

19.     Under the HMA, Hyatt Asia-Pacific, controlled by Hyatt, agreed to manage the Hotel in conformity with "Hyatt International's Design Recommendations and Minimum Standards for newly constructed hotels."  Hyatt Asia-Pacific also agreed to operate the Hotel "under standards comparable to those prevailing in 'Hyatt Regency' hotels."

20.     Hyatt Asia-Pacific, controlled by Hyatt, also had the power to appoint the General Manager of the Hotel.  Under the HMA, the General Manager, supervised by Hyatt, makes the day-to-day decisions with respect to the operations of the Hotel.

21.     Indeed, under the HMA, the Hotel could not even *open as a hotel* until Hyatt approved that the Hotel was ready.  Hyatt Asia-Pacific, controlled by Hyatt, alone had the power to certify that "the staff has been appropriately trained" and that "the Hotel is otherwise ready to render appropriate services to guests on a fully operational basis."

22.     Hyatt, through its subsidiary Hyatt Technical, also sets specifications for Hyatt properties worldwide, including the Hotel and specifically its swimming pools.

23.     Under the terms of the Technical Services Agreement, Hyatt Technical set the standards for the "planning, building, furnishing, equipping and decorating" of newly-constructed Hyatt International hotels, such as the Hotel.  Hyatt Technical provided designs and minimum standards for the Hotel's "recreational facilities and areas" as well as "public grounds, gardens and other landscaping features and facilities."  The agreement required that "all concepts, plans, specifications and designs" be submitted to Hyatt Technical for approval.  Hyatt Technical's services included a "Life Safety Consultant," a design architect, construction planning and, upon information and belief, the negligent design of (or in the alternative, approval of the negligent design for) the Hotel's swimming pool.

24.     Hyatt, through its subsidiary Hyatt International, also provides information to customers about the Hotel resort in advertisements and promotional materials, including on one or more Internet websites.  On information and belief, Hyatt operates and controls the content of the Hotel's website.  The website states the following in the lower right hand corner of the home page: "© 2015 Hyatt

Corporation."  A similar mark has appeared on the Hotel website at all relevant times in this case.  Hyatt controlled and directed the branding and marketing efforts of the Hotel through Hyatt International, a subsidiary of Hyatt.

25.     Under the terms of the Marketing Sublicense Agreement, Hyatt International had sole authority to approve the use of the Hyatt marks for the promotion of the Hotel.  Another Hyatt subsidiary, Hyatt Asia-Pacific, retained the rights to promote the Hotel under the HMA, including, upon information and belief, through the Hyatt website through which the Cho family was induced to book and did book their stay at the Hotel.

26.     Upon information and belief, Hyatt emphasizes and promotes the importance of its brand name trademarks.  Hyatt has a trademark statement on its website, indicating that "Hyatt®, Hyatt Hotels & Resorts®, Park Hyatt®, Andaz®, Hyatt Regency®, Grand Hyatt®, Hyatt Place®, Hyatt House®, Hyatt Residence Club™, Camp Hyatt®, Grand Club®, Regency Club®, Hyatt Gold Passport®, and other related marks used on the Site are trademarks of Hyatt Corporation and its affiliates. . . .  Those marks and related names, trademarks, logos, designs, and trade dress shown on the Site are owned by Hyatt and protected by the trademark laws of the United States and other jurisdictions."  On information and belief, this also includes the trademarks and logos affiliated with the Hotel.

27.     The Hyatt marks have been widely advertised.  The marks have become an asset of substantial value as a symbol of Hyatt through widespread and favorable

public acceptance and recognition, as recognized by their protection under the Marketing Sublicense Agreement.

## THE CHOS DECIDED TO STAY AT A HOTEL BECAUSE OF ITS REPUTATION FOR SAFETY AND QUALITY

28.     In 2014, the Cho Family, which included H.Y.C.'s grandparents, aunt, uncle, and minor cousins, decided to plan a family vacation for a period of time commencing on October 2, 2014.

29.     Kyung Chul Cho and Jin Hee Cho (collectively, "the Chos") visited a website of the Hotel, which prominently displays the Hyatt mark.  The Chos relied on the statements on the website regarding Hyatt including statements that the resort was suitable for families.  On information and belief, all such websites operate with the knowledge and consent of Hyatt and its subsidiaries, who zealously guard their trademarks and monitor and control the content of promotional materials.

30.     The Hyatt website describes the Hotel as a family-friendly resort. Among other things, the Hyatt website describes a "Camp Hyatt" at the Hotel for children between the ages of three to twelve years old.  Some of the available activities described include "Face painting • number and flag • Children's dress-up party • team-building activities • I am a singer • duck, duck, goose • Camp Hyatt stretching • chair play • Wii and Playstation • 1, 2, 3 stop • Mini cinema • colouring • Wall climbing • treasure hunt • Hat decoration • beach fun walk • Catch me up • blind man's bluff • Chicken mom • clay objects • Hide and seek • missing objects game • Little chefs of the world • book reading • Beach sand castle • in-box games • Ball play • balloon decoration • I am a magician • pretend fishing • Pouring water."

31.     The Hyatt website also describes the Hotel as having "Family Leisure Activities," including "Pool," "Resort activities," and a "Water Slide."   As Hyatt describes on the Hotel website with respect to the water slide, "[o]ur resort is designed so parents and children may enjoy their stay to the fullest extent. . . . A water slide has been installed at our resort's main pool offering our guests an endless variety of outdoor activities amid the restaurants and the expanded sun deck area."   But the statements on the website did not stop there.   Hyatt continues: "This complimentary water slide feature gives us one more reason to claim that *we are the best family resort in Danang*."  (Emphasis added.)

32.     With respect to the swimming pools located at the Hotel, the Hyatt website states that Hyatt Regency Danang Resort and Spa has five pools in total, including the Beach Pool, the Garden Pool, the Fitness Pool, the Regency Club Pool and the Residences Pool.  The main pool at the resort is located a few steps away from the sand and offers a spectacular beach view and various small connecting water features in a unique labyrinthine design."   According to Hyatt's website, the pools are open "[f]rom sunrise to sunset (based on weather condition)," and *"[a] lifeguard service is available during opening hours*."   (Emphasis added.)   The Hotel even provides "swimming lessons" for "children aged seven years and above."

33.     After reviewing the Hyatt website, and in reliance upon the statements and representations contained therein, the Chos decided to book a trip to the Hotel.

**THE DAY AFTER THE FAMILY'S ARRIVAL,
H.Y.C. SUFFERS CATASTROPHIC INJURIES
IN THE HOTEL SWIMMING POOL**

**WITH NO LIFEGUARD ON DUTY AS ADVERTISED AND**
**NO ADEQUATE WARNING THAT NO LIFEGUARD WAS ON DUTY**

34. On October 2, 2014, the Cho Family left home for their vacation and arrived at the Hotel in Danang, Vietnam.

35. The next day, the Cho family went to the resort's swimming pool area. The large "labyrinthine" pool was being used by other patrons.

36. The Hyatt Defendants, however, did not provide a lifeguard for the swimming pool, despite the fact that it represented that a lifeguard would be on duty during operating hours and the resort catered to families, *and it had a children's pool immediately adjacent to the larger pool.*

37. The Hyatt Defendants failed to adequately warn the Cho Family that there was no lifeguard on duty.

38. The Hyatt Defendants failed to post signs in conspicuous and sufficient places at the swimming pool warning that there was no lifeguard on duty.

39. H.Y.C. wandered from the children's sand area into the connected large freeform pool.

40. Jin Hee was unable to locate her daughter, H.Y.C..

41. Jin Hee discovered her daughter, H.Y.C., floating and motionless in the adult pool.

42. H.Y.C. was submerged in the large pool for a sufficient duration to cause catastrophic, permanent brain damage.

43. Jin Hee rescued her daughter from the pool.

44.     The Hyatt Defendants posted no employees in the swimming pool area who were responsible for monitoring the pool, capable of detecting H.Y.C.'s presence at the bottom of the large swimming pool, assisting Jin Hee in her rescue effort, or competently performing CPR and other resuscitation efforts on H.Y.C..

45.     After Jin Hee rescued H.Y.C. from the adult swimming pool, a hotel worker in a Hyatt uniform began performing CPR on H.Y.C..

46.     After more than ten minutes from the time the hotel worker began CPR on H.Y.C., another hotel worker brought over an AMBU Single Patient Use Resuscitator to aid in the resuscitation but placed the mask on upside down and incorrectly.  It was clear that the individual who put on the resuscitator was not properly trained.

47.     During this time, the Cho Family repeatedly asked the hotel management and staff about the status of an ambulance and requested hotel management and staff to drive H.Y.C. to the hospital in a hotel vehicle.

48.     The hotel management and staff informed the Cho Family that they had to wait for an ambulance.  The hotel staff refused to drive the Cho family to the hospital, despite their repeated requests.

49.     An ambulance did not arrive for at least forty minutes from the time the hotel employee began to apply CPR to H.Y.C.

50.     The Cho Family later discovered that the nearest hospital was only an approximate five-minute drive from the Hotel.

51.     H.Y.C. remained at the Danang Hospital for Women and Children until October 30, 2014.

52.     H.Y.C. suffered profound damage to her brain functions as a result of being submerged in the pool.

53.     H.Y.C. remains in a compromised state and requires constant medical attention.

54.     H.Y.C. will remain in a compromised state and require constant medical attention for the rest of her life.

## COUNT I:

### NEGLIGENCE
### (Against All Defendants)

55.     Plaintiffs reallege all preceding paragraphs as though fully set forth herein.

56.     Hyatt controls the day-to-day operations of the Hotel, whose facilities they operated and advertised.

57.     The Hyatt Defendants owed a duty to the Chos, as business invitees, to exercise reasonable care to ensure that the entire premises, including the "inviting" swimming pool, was safe.

58.     The Hyatt Defendants breached their duty to provide a safe swimming pool area, *inter alia*, by:

a.   Failing to provide lifeguards.

b.   Failing to warn the Chos that there was no lifeguard on duty.

    c.  Failing to post adequate signage at the pool stating that there was no lifeguard on duty.

    d.  Negligently designing the swimming pool, or alternatively, approving the negligent design of the swimming pool.

    e.  Failing to provide adequate safety precautions with respect to use of the swimming pools by minors.

    f.  Failing to adequately train Hotel employees to observe the use of the pool by guests.

    g.  Negligently hiring, training and supervising Hotel employees.

    h.  Failing to train employees in application of resuscitation equipment when needed.

    i.  Otherwise failing to comply with applicable law and failing to manage the day-to-day operations of the hotel in a manner to ensure the safety of the guests.

59.    The negligence of the Hyatt Defendants was a direct and proximate cause of Plaintiffs' injuries.

60.    The Hyatt Defendants' negligence created a situation in which an injury such as the injury sustained by H.Y.C. was imminently foreseeable.

61.    As a result of the negligence of the Hyatt Defendants, Plaintiffs suffered grievous permanent injuries and damages.  H.Y.C. suffered severe fright and pain, sustained profound, life-altering brain injuries, and as a consequence will remain in a compromised state for the rest of her life.  Kyung Chul Cho, Jin Hee Cho, and S.Y.C.

have sustained serious mental anguish and loss of consortium as a result of H.Y.C.'s injuries.

62.     The Hyatt Defendants had the actual authority to manage and control the Hotel, including, but not limited to, the design, building, operation, and maintenance of the Hotel, and are thus liable for the negligence alleged in Count I.

63.     Alternatively, under the doctrine of apparent authority and the facts and circumstances alleged, Hyatt is liable for the negligence of its subsidiaries and affiliates, including Hyatt International, Hyatt Technical, and Hyatt Asia-Pacific.

## COUNT II:

### NEGLIGENCE UNDER
### THE DOCTRINE OF ATTRACTIVE NUISANCE
### (Against All Defendants)

64.     Plaintiffs reallege all preceding paragraphs as if fully set forth herein.

65.     Hyatt controls the day-to-day operations of the Hotel, whose facilities they operated and advertised.

66.     The Hyatt Defendants owed a duty to the Chos, as business invitees, to exercise reasonable care to ensure that the entire premises, including the "inviting" swimming pool, were safe.   This duty included maintaining a safe swimming environment at the pool.   Defendant knew, or should have known, that the inviting large swimming pool, adjacent to the children's pool, was alluring to children and that, especially when unsupervised by a lifeguard, without an adequate warning that no lifeguard was on duty, the pool presented a danger to children.

67.     Despite its assurances that the Hotel was a family-friendly environment and its knowledge that the large swimming pool was both alluring and dangerous to children, the Hyatt Defendants breached its duty to the Chos.  The Hyatt Defendants failed to exercise reasonable care to protect from injury a child who yielded to the pool's attraction by, *inter alia*, failing to provide a lifeguard on duty and failing to warn the Cho Family that there was no lifeguard on duty.

68.     The injuries sustained by H.Y.C. were imminently foreseeable in the absence of a lifeguard and any warning to the Cho Family that there was no lifeguard on duty.

69.     The utility to Hyatt of the unsafe swimming pool and the burden of eliminating the danger were slight, compared to the risk to the safety of children at the Hotel.

70.     Under the foregoing circumstances, the swimming pool constituted an attractive nuisance to children and the maintenance of that facility was a proximate cause of H.Y.C.'s submersion and all resulting injuries to Plaintiffs.

71.     As a result of the Hyatt Defendants' negligence, Plaintiffs suffered grievous injuries and damages.  H.Y.C. suffered severe fright and pain, sustained profound life-altering brain injuries and will remain in a compromised state for the rest of her life.  Kyung Chul Cho, Jin Hee Cho, and S.Y.C. have sustained serious mental anguish and loss of consortium as a result of H.Y.C.'s injuries.

72.     The Hyatt Defendants had the actual authority to manage and control the Hotel, and are thus liable for the negligence alleged in Count II.

73.     Alternatively, under the Doctrine of Apparent Authority and the facts and circumstances alleged, Hyatt is liable for the negligence of its subsidiaries and affiliates, including Hyatt International, Hyatt Technical, and Hyatt Asia-Pacific.

## COUNT III:

### NEGLIGENT MISREPRESENTATION
### (Against Hyatt and Hyatt International)

74.     Plaintiffs reallege all preceding paragraphs as if fully set forth herein.

75.     Hyatt controls the day-to-day operations of the Hotel, whose facilities they operated and advertised.

76.     Hyatt and Hyatt International owed Plaintiffs a duty to exercise reasonable care when making representations about the safety features and family-friendly nature of the Hotel.

77.     Hyatt and Hyatt International breached their duty by failing to exercise reasonable care when making representations to the Chos regarding the Hotel. Specifically, Hyatt and Hyatt International represented that the Hotel was a family-friendly resort safe for children. Among other representations, the website specifically advertised the pool as a "family leisure activity," represented that the pool had a "lifeguard service," and represented that "we are the best family resort in Danang." Hyatt and Hyatt International intended these representations to induce guests to book their stays at the Hotel.

78.     These representations were false. In reality, the swimming pools of the Hotel had been negligently designed and lacked sufficient safety features, including a

lifeguard and employees who were properly trained in resuscitation and emergency response.

79.     The Chos relied on these representations and booked the trip to the Hotel during which H.Y.C suffered her catastrophic injuries.

80.     Hyatt and Hyatt International's negligent misrepresentations via the Hyatt website were a direct and proximate cause of H.Y.C.'s injuries and all of Plaintiffs' injuries and damages.

81.     As a result of Hyatt and Hyatt International's negligent misrepresentations via the Hyatt website, H.Y.C. was submerged in the swimming pool and sustained serious injuries.  She will remain in a compromised state for the rest of her life.  Kyung Chul Cho, Jin Hee Cho, and S.Y.C. have suffered and continue to suffer mental anguish and loss of consortium as a result of H.Y.C.'s injuries.

82.     Hyatt and Hyatt International had the actual authority to manage and control the Hotel, and are thus liable for the negligence alleged in Count III.

83.     Alternatively, under the Doctrine of Apparent Authority and the facts and circumstances alleged, Hyatt is liable for the negligence of its subsidiaries and affiliates, including Hyatt International, Hyatt Technical, and Hyatt Asia-Pacific.


**COUNT IV:**

**NEGLIGENT TRAINING AND RETENTION OF EMPLOYEES**
**(Against Hyatt)**

84.     Plaintiffs reallege all preceding paragraphs as if fully set forth herein.

85.     Hyatt controls the day-to-day operations of the Hotel, whose facilities they operated and advertised.

86.     Hyatt owed Plaintiffs a duty to exercise reasonable care in training and retention of the employees of the Hotel.

87.     Hyatt breached its duty by failing to properly train the employees of the Hotel on generally accepted swimming pool safety standards, including pool design, supervision, signage and warnings to patrons.  Hyatt breached their duty by failing to properly train the employees of the Hotel to provide lifeguards at a family resort swimming pool, to warn patrons that there was no lifeguard on duty and to provide proper resuscitation and response training for emergency situations.

88.     As a result of Hyatt's breach of its duty to properly train the employees of the Hotel, the Hyatt Defendants failed to provide a lifeguard at its inviting, unfenced swimming pool and failed to warn the Chos that there was no lifeguard on duty.  Hyatt also retained employees who were not properly trained.  Consequently, H.Y.C. entered the swimming pool undetected and became submerged in the swimming pool.  The hotel employee who initially performed CPR on H.Y.C. performed CPR incorrectly, and placed the AMBU Single Patient Use Resuscitator mask on upside down.  Hotel staff also refused to take H.Y.C. to the Hospital.

89.     Hyatt's negligent training and retention of the Hotel's employees was a direct and proximate cause of H.Y.C.'s injuries and all of Plaintiffs' injuries and damages.

90.     As a result of Hyatt's negligent training and retention of the Hotel employees, H.Y.C. was submerged in the swimming pool and sustained serious injuries. She will remain in a compromised state for the rest of her life.  Kyung Chul Cho, Jin Hee Cho, and S.Y.C. have suffered and continue to suffer mental anguish and loss of consortium as a result of H.Y.C.'s injuries.

## COUNT V

### NEGLIGENT SUPERVISION OF EMPLOYEES
### (Against Hyatt)

91.     Plaintiffs reallege all preceding paragraphs as if fully set forth herein.

92.     Hyatt controls the day-to-day operations of the Hotel, whose facilities they operated and advertised.

93.     Hyatt owed Plaintiffs a duty to exercise reasonable care in supervising the employees of the Hotel.

94.     Hyatt breached its duty to properly supervise the employees of the Hotel. As a result of this negligent supervision, Hotel failed to provide lifeguards at a crowded swimming pool, warn the Chos that there was no lifeguard on duty, provide warning signs that there was no lifeguard on duty, and failed to train the employees of the Hotel to provide response and proper resuscitation in emergencies.

95.     As a result of Hyatt's breach of its duty to properly supervise the employees of the Hotel,  H.Y.C. entered the large swimming pool immediately adjacent to the children's pool undetected and became submerged in the swimming pool.  The hotel employee who initially performed CPR on H.Y.C. performed CPR incorrectly, and placed the AMBU Single Patient Use Resuscitator mask upside down.  The Hotel

also refused to take H.Y.C. to the Hospital. Hyatt's negligent supervision of Hotel was a direct and proximate cause of H.Y.C.'s injuries and all of Plaintiffs' other injuries and damages.

96.     As a result of Hyatt's negligent supervision of Hotel employees, H.Y.C. was submerged in the swimming pool and sustained devastating personal injuries. She will remain in a compromised state for the rest of her life. Kyung Chul Cho, Jin Hee Cho, and S.Y.C. have suffered mental anguish and loss of consortium as a result of H.Y.C.'s injuries.

## COUNT VI

### NEGLIGENT DESIGN AND/OR APPROVAL OF
### THE HOTEL SWIMMING POOL
### (Against Hyatt and Hyatt Technical)

97.     Plaintiffs reallege all preceding paragraphs as if fully set forth herein.

98.     Hyatt and Hyatt Technical owe a duty to exercise reasonable care in designing and/or approving the use of swimming pools safe for the patrons of its hotels.

99.     Hyatt controls, or has the right to control, the business of the Hotel, including through its subsidiaries under the HMA, Marketing Sublicense Agreement, and the Technical Services Agreement. This included the design and approval of its hotels, recreational facilities, swimming pools, parking areas and signage.

100.    On information and belief, Hyatt and Hyatt Technical were involved in the design plan for the Hotel, specifically including the swimming pool, which is the architectural centerpiece of the property and a center of family recreational activities.

101.    Hyatt, through its subsidiary Hyatt Technical, approved the use of the swimming pool of the Hotel after its authorized personnel, acting within the scope of their employment, traveled to the site and inspected and evaluated the facility in person.

102.    Hyatt and Hyatt Technical breached their duty to exercise reasonable care in the design and/or approval of a safe swimming pool when it participated in and/or approved the "labyrinthine" design and/or approved the use of Hotel swimming pool, which, on information and belief, did not meet generally accepted safety standards.

103.    As a result of Hyatt and Hyatt Technical's breach of their duty to exercise reasonable care in the design and/or approval of use of a swimming pool safe for its patrons, H.Y.C. entered the Hotel swimming pool undetected and was submerged in the swimming pool.   Consequently, she sustained permanent and catastrophic injuries.

104.    Hyatt and Hyatt Technical's negligent design and/or approval of the use of the Hotel swimming pool was a direct and proximate cause of H.Y.C.'s injuries.

105.    As a result of Hyatt and Hyatt Technical's negligence, H.Y.C. sustained grievous and permanent injuries.  She will remain in a compromised state for the rest of her life.  Kyung Chul Cho, Jin Hee Cho, and S.Y.C. have suffered and continue to suffer mental anguish and loss of consortium as a result of H.Y.C.'s injuries.

## COUNT VII

**NEGLIGENCE PER SE**
**(Against All Defendants)**

106.    Plaintiffs reallege all preceding paragraphs as if fully set forth herein.

107.   At the time and place of H.Y.C.'s injury, there was a law, ordinance and statute in effect under Vietnamese law that required a lifeguard to be on duty while swimming pools were being used by hotel patrons.   Defendants were in violation of such law, ordinance and statute for failing to have a lifeguard on duty when H.Y.C. nearly drowned.

108.   As a result of the Hyatt Defendants' negligence, H.Y.C. sustained grievous and permanent injuries.   She will remain in a compromised state for the rest of her life.   Kyung Chul Cho, Jin Hee Cho, and S.Y.C. have suffered and continue to suffer mental anguish and loss of consortium as a result of H.Y.C.'s injuries.

## COUNT VIII

### NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS
### (Against All Defendants)

109.   Plaintiffs reallege all preceding paragraphs as if fully set forth herein.

110.   Hyatt controls the day-to-day operations of the Hotel, whose facilities they operated and advertised.

111.   The Hyatt Defendants owed a duty to the Chos, as business invitees, to exercise reasonable care to ensure that the entire premises, including the "inviting" swimming pool, was safe.

112.   The Hyatt Defendants breached its duty to provide a safe swimming pool area, *inter alia*, by:

     a.   Failing to provide lifeguards.

     b.   Failing to warn the Chos that there was no lifeguard on duty.

c.  Failing to post adequate signage at the pool stating that there was no lifeguard on duty.

d.  Negligently designing the swimming pool, or alternatively, approving the negligent design of the swimming pool.

e.  Failing to provide adequate safety precautions with respect to use of the swimming pools by minors.

f.  Failing to adequately train Hotel employees to observe the use of the pool by guests.

g.  Negligently hiring, training and supervising Hotel employees.

h.  Failing to train employees in application of resuscitation equipment when needed.

i.  Otherwise failing to comply with applicable law and failing to manage the day-to-day operations of the hotel in a manner to ensure the safety of the guests

113.    As a result of the Hyatt Defendants' negligence, Plaintiffs have suffered emotional distress.   The negligence of the Hotel was a direct and proximate cause of Plaintiffs' emotional distress.

114.    Plaintiffs were in the pool area beginning at the time H.Y.C. wandered from the children's sand area into the connected large freeform pool.

115.    The Cho Family witnessed firsthand the failed rescue attempts performed upon H.Y.C.

116.    The Cho Family was shocked and outraged at the failures of the Hotel and its staff from the time H.Y.C. wandered into the large freeform pool throughout the witnessed rescue attempts.

117.    As a result of Hyatt Defendants' negligence, the Cho Family suffered physical injury and emotional distress.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs demand judgment against the Hyatt Defendants for:

1.    General damages for H.Y.C.'s fright, pain and suffering;

2.    Special damages for H.Y.C.'s past, present and future medical, hospital, medication, medical transportation, medical equipment, doctors, health care, rehabilitation therapy, nurse's and all related health care and life care expenses;

3.    Special damages for H.Y.C.'s loss of future earnings and injury to earning capacity;

4.    General damages for Kyung Chul Cho and Jin Hee Cho's loss of filial consortium as the result of being deprived of H.Y.C.'s companionship;

5.    General damages for S.Y.C.'s loss of consortium as a result of being deprived of H.Y.C.'s companionship;

6.    General damages for the Cho Family's emotional distress;

7.    Interest and costs; and

8.    Such other and further damages as the Court deems just and proper.

Dated:       September 30, 2016

                                                 /s/ C. Scott Reese
                                         C. Scott Reese (No. 2036)
                                         Gregory F. Fischer (No. 5269)
COOCH & TAYLOR, P.A.
The Brandywine Building
1000 West Street, 10th Floor
P.O. BOX 1680
Wilmington, DE  19801
Telephone:    (302) 984-3800
Facsimile:    (302) 984-3939

sreese@coochtaylor.com
gfischer@coochtaylor.com

Counsel for Plaintiffs H.Y.C., a minor, by
his Parents and Next Friends, Kyung Chul
Cho and Jin Hee Cho, Kyung Chul Cho,
individually, Jin Hee Cho, individually,
and S.Y.C., a minor, by his Parents and
Next Friends, Kyung Chul Cho and Jin
Hee Cho

Of Counsel:
Jennifer Quinn-Barabanov (pro hac vice pending)
STEPTOE & JOHNSON LLP
1330 Connecticut Avenue NW
Washington, D.C. 20036
Telephone:    (202) 429-3000
Facsimile:    (202) 429-3902

Michael A. Keough (pro hac vice pending)
STEPTOE & JOHNSON LLP
1114 Avenue of the Americas
New York, New York 10036
Telephone:    (212) 506-3900
Facsimile:    (212) 506-3950